FILED

2016 Aug-24  AM 10:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| KENNETH WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:15-cv-00641-TMP |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The claimant, Kenneth Wilson, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").  Mr. Wilson timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## I.    Introduction

Mr. Wilson was forty-four years old at the time of his alleged disability onset date, and has a limited education. (Tr. at 39).  His past relevant work experience

includes employment as an electrician helper and as a welder/assembler of car seats. (Tr. at 38). Mr. Wilson claims that he became disabled on November 1, 2010, due to hepatitis C and chronic obstructive pulmonary disease ("COPD"). (Tr. at 29, 200).[1]

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, the claimant is not disabled and the evaluation stops. *Id.* If he is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step

---

[1] The claimant's initial application for disability alleged only hepatitis C and COPD as the bases for his claim. During the administrative hearing before the ALJ, however, he also asserted that he is disabled due to severe depression, post-traumatic stress disorder, and other mental health problems.

three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he will be found disabled as a matter of law without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity will be made, and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can

perform; and, once that burden is met, the claimant must prove his inability to perform those jobs in order to be found disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying this sequential evaluation process, the ALJ found that Mr. Wilson has not engaged in substantial gainful activity since the alleged onset of his disability. (Tr. at 31). According to the ALJ, claimant's hepatitis C, COPD, cervical and lumbar degenerative joint disease, major depressive disorder, and history of substance abuse are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, the ALJ found that these impairments neither meet nor are medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 32). The ALJ did not find Mr. Wilson's allegations to be totally credible, and he determined that Mr. Wilson has the residual functional capacity to perform "light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can do simple, but not complex tasks; maintain attention and concentration for two hours at a time to complete an eight-hour workday provided all customary breaks were given; his contact with co-workers and supervisors should be casual; he would do best if he had no contact with the general public; contact with others should not be intensive; and feedback should be supportive. The claimant can lift and/or carry 20 pounds occasionally

and 10 pounds frequently; sit approximately six hours in an eight-hour day and stand and/or walk approximately six hours in an eight-hour day; he can frequently push/pull with his lower extremities; occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; he is precluded from work around unprotected heights, dangerous or moving equipment, ladders, ropes and scaffolds; and he needs to avoid concentrated exposure to extreme cold, vibration, fumes, odors, dust and gases." (Tr. at 34-35).

According to the ALJ, Mr. Wilson is unable to perform any of his past relevant work, he is a "younger individual," and he has a "limited education," as those terms are defined by the regulations. (Tr. at 38-39). He determined that transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules support a finding of "not disabled" regardless of transferability of job skills. (Tr. at 39). The ALJ found that Mr. Wilson has the residual functional capacity to perform a range of light work. (*Id.*) Even though the claimant cannot perform the full range of light work, the ALJ used the vocational expert's testimony to determine that there are a number of jobs in the economy that Mr. Wilson is capable of performing, such as sorter, cleaner/housekeeper, and assembler. (*Id.*) The ALJ concluded his findings by stating that the claimant "has

not been under a disability, as defined in the Social Security Act, from November 1, 2010, through the date of this decision." (Tr. at 40).

Following the ALJ's decision on October 11, 2013, the claimant sought review before the Appeals Council. While that review was pending, he submitted an additional mental health source statement and an evaluation by a psychologist, Dr. Charles Wilson, dated February 12, 2014. By notice dated February 11, 2015, the Appeals Council denied the claimant's request for review. In doing so, the Appeals Council explained that it would grant review if it "receive[d] new and material evidence and the decision [of the ALJ] is contrary to the weight of all the evidence now in the record." (Tr. at 1). The Appeals Council further explained:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.

> We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of evidence of record. We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

> We also looked at a psychological evaluation dated February 11, 2014 and a mental health source statement dated February 12, 2014 from David Wilson, Ph.D. The Administrative Law Judge decided your case through October 11, 2013. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before October 11, 2013.

(Tr. at 1-2). The claimant filed this action for review of the Commissioner's determination on April 15, 2015.

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this court finds that the

evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the claimant meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power

to reverse that finding as long as there is substantial evidence in the record supporting it.

### III.    Discussion

Mr. Wilson alleges that the ALJ's decision should be reversed and remanded for three reasons.  First, he argues that the Appeals Council erroneously failed to determine whether the new evidence from Dr. Charles Wilson presented by the plaintiff was chronologically relevant to the ALJ's decision, and the Appeals Council declined to consider the new evidence he presented after the ALJ's determination.  Second, the plaintiff contends that, when considered in light of the new evidence submitted to the Appeals Council, the ALJ's determination was not based on substantial evidence.  Finally, Mr. Wilson argues that he meets the requirements for disability listing 12.04.  (Doc. 13, p. 4).  The claimant argues that the Appeals Council erred by failing to remand his claim for consideration in light of the new evidence.

After the ALJ's denial of Mr. Wilson's SSI petition, the claimant presented evidence to the Appeals Council that was new and material to his claim, consisting of a psychological evaluation dated February 11, 2014, and a mental health source statement dated February 12, 2014, completed by David R. Wilson, Ph. D. ("Dr.

Wilson"). (Tr. at 8-14). The psychological evaluation by Dr. Wilson diagnosed the plaintiff with recurrent major depressive disorder that is severe with psychotic symptoms; history of opiate, cannabis, and cocaine abuse; post-traumatic stress disorder ("PTSD"); and average intelligence. (Tr. at 14). The mental health source statement by Dr. Wilson stated that the plaintiff could not "maintain attention, concentration, and/or pace for two hours"; could not "perform activities on a regular schedule"; could not "sustain an ordinary routine"; could not "accept instructions and… criticism from supervisors"; could not "maintain socially appropriate behavior" and "adhere to basic standards of neatness and cleanliness"; and would fail to report to work for 30 out of 30 days. (Tr. at 8).

The Appeals Council denied Mr. Wilson's request for review and stated in the denial that the Council "found no reason under our rules to review the Administrate Law Judge's decision." (Tr. at 1). The Appeals Council further stated that "[w]e also looked at a psychological evaluation dated February 11, 2014 and a mental health source statement dated February 12, 2014 from David Wilson, Ph. D. The Administrative Law Judge decided your case through October 11, 2013. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before October 11, 2013." (Tr. at 2). The Appeals Council Exhibit List included: 1) a brief dated

February 3, 2014, from Rose Marie Allenstein; 2) correspondence dated February 18, 2014, from Rose Marie Allenstein; 3) correspondence dated June 16, 2014, from Rose Marie Allenstein; 4) records dated November 16, 2006, to November 18, 2006, from Jacksonville Medical Center; and 5) records dated March 8, 2007, from Northeast Alabama Regional Medical Center.  (Tr. at 5).

### A.  Did the Appeals Council Consider the Newly Submitted Evidence?

Mr. Wilson's assertion that the Appeals Council failed to consider the new evidence may be addressed using the same analysis that was used in the Eleventh Circuit's opinion in *Washington v. Social Security Administration Commissioner*, 806 F.3d 1317 (11th Cir. 2015), where the procedural factors are almost identical to the instant case.  In *Washington*, as in this case, the claimant submitted a psychological evaluation report and a Mental Health Source Statement by Dr. Wilson to the Appeals Council after the decision of the ALJ.  *Id.* at 1319.  The court of appeals noted:

> The Appeals Council denied Mr. Washington's request for review, finding no reason to review the ALJ's decision.  In reaching this decision, the Appeals Council considered the treatment records from CED Mental Health Center but not the materials from Dr. Wilson and Dr. Tualo.  The Appeals Council explained that it refused to consider the additional evidence from Dr. Wilson and Dr. Tulao because their opinions concerned a later time period and were immaterial to whether Mr. Washington was disabled on or before the date of the ALJ's decision.

*Id.* at 1320.  The instant case is different only in that the Appeals Council did not consider the materiality of Dr. Wilson's report concerning the plaintiff in this case. Here, the Appeals Council denied review of the new evidence solely because it perceived the evidence to relate "to a later time."  In *Washington*, the court of appeals concluded that it was legal error for the Appeals Council to refuse to consider the new evidence submitted by the claimant.  First, the court of appeals rejected the argument that the new evidence from Dr. Wilson was immaterial[2]; the court then concluded that they were also chronologically relevant, even though prepared seven months after the date of the ALJ's decision.  The court wrote:

> The Appeals Council committed legal error when it refused to consider Dr. Wilson's opinions.  Although the Appeals Council refused to consider the materials because they were not chronologically relevant, the Commissioner now argues that the materials were also immaterial.  We disagree.
>
> * * *
>
> The opinions contained in Dr. Wilson's materials—including that Mr. Washington had extreme limitations in social interaction, sustained concentration, and persistence—are chronologically relevant even though Dr. Wilson examined him several months after the ALJ's decision.  Dr. Wilson based his opinions on the combined effects of Mr. Washington's hallucinations and limited cognitive abilities.  Dr. Wilson understood that Mr. Washington had experienced

---

[2]   Although it is not clear, it appears that the government's memorandum in support of the Commissioner's decision (Doc. 15) also argues that Dr. Wilson's report and Mental Health Source Statement were not "material" within the meaning of Social Security regulations.  The Commissioner does not seem to challenge whether the evidence was "new."

hallucinations during the time period prior to the ALJ's decision because (1) Mr. Washington told Dr. Wilson that he had experienced hallucinations throughout his life, and (2) Dr. Wilson reviewed Mr. Washington's mental health treatment records from the period before the ALJ's decision reflecting that he repeatedly reported experiencing auditory and visual hallucinations. Further, Dr. Wilson's opinions about Mr. Washington's cognitive defects, including that his verbal skills were in the range of borderline or intellectual disability, relate back to the period before the ALJ's decision.

\* \* \*

Although Dr. Wilson never explicitly stated that his opinions related back to the date of the ALJ's decision, we have recognized that medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant. *See Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir.1983) (considering a "treating physician's opinion" even though "he did not treat the claimant until after the relevant determination date"), superseded on other grounds by statute, 42 U.S.C. § 423(d)(5). We therefore conclude that, in the specific circumstances of this case, Dr. Wilson's opinions are chronologically relevant, even though his evaluation occurred after the date of the ALJ's decision.

Because Dr. Wilson's opinions are new, material, and chronologically relevant evidence, the Appeals Council was required to consider them. The Appeals Council's refusal to consider the new evidence from Dr. Wilson was an error of law. Accordingly, we reverse the district court's judgment and remand with instruction that the case be returned to the Commissioner for consideration of this evidence in conjunction with all the other evidence in the record.

*Washington v. Social Security Administration Commissioner*, 806 F.3d 1317, 1321-1323

(11th Cir. 2015) (internal footnotes omitted).

From this it is clear that the Eleventh Circuit found that the Appeals Council refused to consider new evidence submitted after the ALJ's decision because the Appeals Council concluded that the evidence was not chronologically relevant. Even though the evidence was made part of the record, the Appeals Council refused to consider it. Because the evidence was chronologically relevant, contrary to the finding of the Appeals Council, a legal error (not just a factual error) occurred because the Appeals Council failed to carry out its duty to consider whether the ALJ's decision was unsupported by substantial evidence in light of *all* the evidence in the record. Thus, *Washington* makes clear that a refusal by the Appeals Council to consider post-ALJ decision evidence on the basis that it is not chronologically relevant is reviewable as a "legal error" by the district court.[3] And, further, for purposes of this case, it makes clear that the answer to the question posed above is "no," the Appeals Council did not consider the new evidence.

---

[3]    The court notes here in passing that the case of *Mitchell v. Commissioner, Social Security Administration*, 771 F.3d 780 (11th Cir. 2014), is distinguishable from this case and *Washington*. In *Mitchell* the Appeals Council did not explain the basis for its denial of review, leaving open the possibility that it, in fact, considered the new evidence with all the other evidence of record and found that it did not change the outcome of the case. It is in this circumstance that the court of appeals in *Mitchell* held that the Appeals Council did not have to explain its weighing and assessment of the new evidence. *Id*. at 785. In the instant case and in *Washington*, however, the Appeals Council refused to consider the new evidence explicitly because it was not chronologically relevant. In doing so, the Appeals Council made clear that it did *not* consider the new evidence at all. If that legal determination of chronological relevance is incorrect, as the Eleventh Circuit found in *Washington*, the Appeals Council's action amounts to an erroneous *failure* to consider "new, material, and chronologically relevant" evidence.

## B.  Is the Newly Submitted Evidence Chronologically Relevant?

Having determined that the question is reviewable as a "legal error," this court is required to determine whether the Appeal Council's finding that the new evidence is not chronologically relevant was correct.  The claimant argues that, in light of the new evidence, the ALJ's determination is not based on substantial evidence.  "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous."  *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1262 (11th Cir. 2007).  "The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'"  *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1261 (11th Cir. 2007), 20 C.F.R. § 404.900(b).  It has been established that the Appeals Council did not consider the new evidence, and this court must determine whether the Appeals Council erred by concluding that the newly submitted evidence was not chronologically relevant. If it is chronologically relevant, the court must determine whether it should remand the case to the Commissioner for review of all of the evidence or to make its own

determination whether the ALJ's decision was contrary to the weight of the evidence.

The court "may review, under sentence four of section 405(g), a denial of review by the Appeals Council," and that denial is reversible error if the new evidence is "new, material, and chronologically relevant" to the Commissioner's determination. *Ingram*, 496 F.3d at 1262. The instant case is distinguishable from *Ingram* because the issue in *Ingram* was whether the district court erred in failing to evaluate the new evidence presented to the Appeals Council when determining whether the ALJ's decision was supported by substantial evidence. In this case, because the Appeals Council refused to consider the new evidence, the court must first determine whether that was legal error, and that requires the court to assess whether the new evidence meets the "new, material, and chronologically relevant" standard of *Ingram*.

In his determination, the ALJ addressed the plaintiff's mental impairments as follows:

> The severity of the claimant's mental impairment does not meet or medically equal the criteria of listing 12.04. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining

concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  A marked limitation means more than moderate but less than extreme.  Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has mild restriction.  The claimant denied any problems with taking care of his personal needs on his own (Exhibit 5E).  During his psychological evaluation, the claimant reported having no routine time to go to bed or get up and no regular schedule for eating (Exhibit 5F).  He reported that he cares for and plays with his sister's dog (Exhibit 5E).  The claimant also reported folding laundry for his mother or sister.  He stated that he takes short walks and drives short distances (Exhibit 5E).  The claimant may have some problems performing his daily activities, but the evidence shows that those problems are no more than mild in nature.

In social functioning, the claimant has moderate difficulties.  The claimant has spent time in prison on drug charges.  During his psychological evaluation, he reported being tired of being a burden on people (Exhibit 5F).  He also reported panic attacks.  The claimant told the examiner he was not involved in any organizations or groups.  At the hearing, he testified he was about to get thrown out of where he lives because he is irritable and curses people out.  The claimant reported problems getting along with others because he becomes anxious and does not like any stress or strife (Exhibit 5E).  It appears that the claimant has a limited social network and limited activities.  However, he testified that he lives with his sister and that he reported that he is able to go out and shop when needed (Exhibit 5E).  He also reported spending time with his mother and sister and attending social functions.  While the claimant may have some limitation in social functioning [those problems] are no more than moderate in nature.

With regard to concentration, persistence or pace, the claimant has mild difficulties.  During a psychological evaluation in July of 2011, the claimant's sense of consciousness was clear and he was alert and

oriented (Exhibit 5F).  His thought processes were within normal limited [sic] and he was able to repeat seven digits forward and four backward.  He could not recall three objects after a 10-minute delay, but he knew there were 12 months in a years [sic] and 52 weeks in a year.  The claimant was also ware [sic] of current news events and he could respond to similarities and interpret proverbs.  The examiner estimated that he was functioning in the average rage of intellectual functioning.  The claimant may have some occasional problems with his concentration, persistence or pace, but he has demonstrated an ability to maintain them at an acceptable pace.  Therefore, he has no more than mild difficulties in his social functioning.

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.  The claimant has had no formal mental health treatment nor has he had any psychiatric hospitalizations.

Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.  The undersigned has also considered whether the "paragraph C" criteria are satisfied.  In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.   The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listing in 12.00 of the Listing of Impairments (SSR 96-8p).   Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(Tr. at 32-33). The plaintiff argues that the psychological evaluation and Mental Health Source Statement ("MHSS") from Dr. Wilson, completed in February 2014, are chronologically relevant and, when taken into consideration, the ALJ's determination regarding the plaintiff's mental impairments is not based on substantial evidence.

The ALJ's decision was dated October 11, 2013, four months before the psychological evaluation and MHSS were performed by Dr. Wilson. According to the psychological evaluation, the plaintiff was "very depressed, and extremely irritable, and this would cause him major problems in any work setting. He would have difficulty attending to tasks and instructions, and he would have severe difficulty relating to others. He would have difficulty with the interpersonal and task aspects of any job. His level of disturbance is so severe that it is highly unlikely that he will be able to maintain any type of job. He is capable of maintaining benefits." (Tr. at 14). Dr. Wilson also observed that the plaintiff "likely experience[s] visual and auditory hallucinations," "has panic attacks," is "very depressed," and suffers from "crying spells" and "suicidal ideations." (Tr. at 12). In his MHSS, Dr. Wilson found, among other things, that the plaintiff would have

to miss 30 days of work during a 30-day period and that his mental limitations existed since November 1, 2010. (Tr. at 8).[4]

The Appeals Council, in determining whether to review the ALJ's determination, must determine whether any new evidence presented is chronologically relevant. In the instant case, the Appeals Council determined that the evidence was not chronologically relevant because the new information had to do with a later time. (Tr. at 2). The ALJ's decision addressed the time period spanning the alleged onset date through October 11, 2013. Although psychological evaluation and MHSS by Dr. Wilson was based on his evaluation of the plaintiff on February 11, 2014, four months after the date of the ALJ's decision, it also was based on records of plaintiff's mental health issues going back to 2010. Newly submitted information, even information from a later date, can be chronologically relevant if it helps shed light on the claimant's condition as it existed during the relevant time period. *See Washington v. Social Security Administration Commissioner*, supra. That is the case here. Dr. Wilson's February 2014 evaluation simply documented the claimant's long-standing depression and anxiety. It is too simplistic to say that Dr. Wilson's evaluation related to a later

---

[4]    In his report, Dr. Wilson noted that he had been supplied with "background records" related to the plaintiff's mental health issues, including records of a psychological evaluation of the plaintiff performed at the Kilby Correctional Facility in July 2010. (Tr. at 9). Thus, Dr. Wilson was able to review a longitudinal history of the plaintiff's mental health and compare it with his own observations.

time just because it occurred four months after the ALJ's decision, where it plainly illuminates a condition that long pre-dated that determination.  Not only did Dr. Wilson have before him plaintiff's medical records going back to 2010, the plaintiff discussed with him episodes of depression, anxiety, and hallucinations clearly pre-dating the ALJ's decision.  Concluding that the report and MHSS "[are] about a later time," and on that basis denying review, is simply error where it clear documented the claimant's long-standing history of mental illness existing before the date of the ALJ's decision.

### C.  Is the new evidence "material" to the determination of claimant's disability?

As noted above, the Appeals Council denied review on the express basis that the new evidence was not chronologically relevant, but the Commissioner now appears to argue also that it was not material to the disability determination.  The court has little difficulty rejecting this argument for many of the same reasons expressed by the Eleventh Circuit in *Washington*.  The issue is not whether, in light of all the evidence (including Dr. Wilson's report and MHSS), the Commissioner's determination is supported by substantial evidence.  The issue now before the court is preliminary to that ultimate decision.  At this point, the court is required only to determine whether Dr. Wilson's report and MHSS have sufficient materiality to the determination of the plaintiff's claim that they must be

considered.  Recall, the ALJ was never presented the evidence and the Appeals Council refused to consider it, so the new evidence has *not* been assessed and considered along with all other evidence in the record.   The question here is, should it?   The court need not and does not express any opinion concerning whether, with consideration of this evidence, the Commissioner's determination still is supported by substantial evidence.   All the court addresses here is the materiality of the evidence that requires its consideration under *Ingram*.

Having determined that the new evidence is chronologically relevant, the court also finds that it is material to the assessment of the plaintiff's claim of disability.[5]  Dr. Wilson provides insights into the plaintiff's depression, anxiety, and hallucinations directly related to the plaintiff's ability to work.  His MHSS expresses clear opinions that the plaintiff is not able to maintain a regular schedule or work routine; is not able to maintain attention, concentration, and pace for two hours; cannot respond properly to supervision and criticism; and cannot maintain basic social behavior and standards of cleanliness.  Dr. Wilson bluntly expressed that the plaintiff would miss all 30 days out of any 30-day work period.  Clearly, these opinions by Dr. Wilson bear directly on the determination of the plaintiff's claimed disability.  The court expresses no opinion concerning whether, in light of

---

[5]    Again, the court does not understand the Commissioner to argue that Dr. Wilson's report and MHSS is not "new," only that it is neither material nor chronologically relevant.

all the other evidence in the record, this new evidence amounts to substantial evidence. That determination is for the Commissioner make after properly considering all the evidence. Thus, the court finds that Dr. Wilson's psychological evaluation report and MHSS are material and must be considered by the Commissioner.

### D. Remand to the Commissioner is necessary

Having found legal error in the Appeals Council's denial of review on the basis that the new evidence submitted by the plaintiff was not material or chronologically relevant, the case must be remanded to the Commissioner for consideration of the new evidence with all other evidence in the record. As the Eleventh Circuit ordered in the similar case of *Washington v. Social Security Administration Commissioner*, , 806 F.3d 1317 (11th Cir. 2015), the proper course for correcting the Appeals Council's failure to consider the evidence is to remand for consideration of it. *Id.* at 1323. By separate order, the court will remand the case to the Commissioner for further consideration in light of this opinion.


## IV.   Conclusion

The Appeals Council's denial of review of the new evidence submitted by the plaintiff on the basis that it related to a time period after the ALJ's decision was

a legal error, due to be reversed and remanded for further consideration by the Commissioner.  Upon review of the administrative record, and considering all of Mr. Wilson's arguments, the Commissioner's decision is due to be REVERSED and the action is REMANDED for further consideration by the Commissioner consistent with this Memorandum Opinion.  A separate order will be entered.

DONE this 24th day of August, 2016.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE